UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSE STERLING,

                Plaintiff,

-against-

HUMAN RESOURCES ADMINISTRATION
(SOCIAL SERVICES), et al.,

                Defendants.

21-CV-10192 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is proceeding *pro se* and *in forma pauperis* (IFP), filed this complaint under 42 U.S.C. § 1983, alleging that Defendants violated her rights and those of her deceased son. By order dated February 2, 2022, the Court directed Plaintiff to amend her complaint to address deficiencies in her original pleading. Plaintiff filed an amended complaint on June 7, 2022, and the Court has reviewed it. For the reasons set forth below, the Court dismisses this action.

                                          **BACKGROUND**

      The Court assumes familiarity with the underlying facts of this case as summarized in the Court's February 2, 2022, order. Plaintiff sued the New York City Human Resources Administration (HRA), asserting that the agency is responsible for the death of her adult son, Bob V.E. Sterling. In her original complaint, Plaintiff first described her often contentious relationship with the New York City Administration for Children's Services (ACS), which she claims "baselessly" accused her of abusing Bob, who had unspecified disabilities and suffered from asthma. (ECF 1, at 5.) Plaintiff further indicated that, based on false reports from Good Shepherd Services, an ACS contractor, Bob was institutionalized. ACS also attempted to have Plaintiff deported, disseminated her personal information to friends and family, blocked her

access to adequate housing, and generally destabilized Plaintiff's and Bob's lives. Despite these obstacles, Plaintiff regained custody of Bob and found a "small place" to live for which ACS wrongfully refused to pay the down payment. (*Id.*)

Plaintiff then alleged that on an unspecified date, HRA switched Bob's Medicaid insurance to an Aetna plan with a life insurance program without informing Bob or Plaintiff of the change. Aetna subsequently denied Bob "medications and standard care," including an inhaler for his asthma. (*Id.*) Plaintiff and Bob went to HRA and "pleaded for help," including switching Bob's insurance back to Medicaid, but HRA did not correct the matter. (*Id.*) On November 28, 2020, while taking a shower, Bob collapsed in the bathtub and died. Plaintiff filed this action seeking to "recuperate the unethical death benefit that was the motive and cause of denying [Bob] medications that led to his death." (*Id.* at 6.)

In the February 2, 2022, order, the Court held the following: (1) Plaintiff lacked standing to assert claims on behalf of Bob or his estate as she did not allege that she was the administrator and sole beneficiary of Bob's estate; and (2) even if Plaintiff could assert such claims, she failed to allege sufficient facts suggesting that HRA's allegedly improper change of Bob's Medicaid benefits amounted to a deprivation of a property interest without due process of law in violation of the Fourteenth Amendment. Because it was not clear that amendment would be futile, the Court granted Plaintiff leave to amend the complaint to allege facts suggesting that she has standing to bring claims on behalf of Bob's estate, and indicating a viable due process claim, such as the unavailability or inadequacy of state post-deprivation procedures to challenge HRA's alleged changing of Bob's Medicaid benefits.

In the amended complaint, Plaintiff sues HRA and two new defendants, ACS and "Medicaid," which she identifies as an agency of the City of New York. She claims that after ACS "baselessly" accused her of child abuse, it began a process where she was obligated to deal

with HRA and ACS, "along with its destructive and phony preventive services, Good Shepherd in the Bronx." (ECF 11, at 6.) Plaintiff asserts that Defendants "established a special relationship" with her and that they must be held accountable for their allegedly unconstitutional actions, which include depriving her of her "parental duties, and the right to have appropriate, timely, and necessary health insurance" for her son. (*Id*.)

Plaintiff provides largely the same factual allegations from the initial complaint, but she expands on the role that ACS played in the lives of Plaintiff and her son. The following information is taken from the amended complaint. After Plaintiff became a widow, she and Bob returned to New York City from Florida. She claims that the Florida Jewish community had animus towards her because she refused to take a "baseless[] psychiatric evaluation," "saved" Bob from a "Jewish psychiatric camp," and "hampered" the foreclosure of the Florida house she had lived in. (*Id*. at 8.) Unnamed members of the Florida Jewish community "succeeded" in getting revenge against Plaintiff through ACS and Allen McCormick, whom Plaintiff describes as "a human trafficker from Florida, who bridged the NYC Jewish networks" and was paid by New York City. ACS, with the assistance of McCormick, "infiltrated" and disrupted Plaintiff's and Bob's lives. (*Id*.) In particular, ACS accused her of child abuse and allowed Good Shepherd to discriminate against her and deprive her of her parental rights. ACS also violated her right to privacy; destroyed her career and "professional potential"; mandated her participation in a drug rehabilitation program although she had never touched drugs; and discriminated against her with "racist allegations." (*Id*. at 9, 11.) In all, ACS's false accusations led to "consequences [that] persist through [Plaintiff's] son's life and after his death on [her]." (*Id*. at 11.)

Further, "HRA (Social Services) and the Medicaid accelerated [Plaintiff's] pain" by ignoring her pleas to help save Bob's life. (*Id*. at 10.) Bob was a person with disabilities, who suffered from psychosis and had breathing problem as a result of a shot he had received at a

3

clinic at St. Barnabas Hospital. At some unspecified point, Bob's insurance, which was handled by HRA, was changed to a "non-consented and hidden Aetna life insurance," which "blocked all access to all existential medications." (*Id*. at 13.) Bob was "prematurely killed . . . because the HRA (Social Services) and the Medicaid, which have constitutional duties to handle poor people and people with disabilities like Bob," for years, "denied Bob medications and access to standard care through silence, no action, no information or communication on why Bob was not fully insured." (*Id*.) Plaintiff asserts that

> the HRA, and the Medicaid intentionally, cruelly, and recklessly deprived me from adequately and efficiently taking care of my child, whom the ACS had accused me of abusing [], and yet, under their responsibility and watch, the Medicaid and the HRA cut Bob's access to medications and standard care, in the process, they created cruel and unbearable situation to me, see my child suffers because the NYC's agencies and its employees had cruelly, inhumanely, and unconstitutionally deprived my son Bob of the right to his life and alleviating his suffering, and also, of any existential help within and under their constitutional duties.

(*Id*. at 6.)

Plaintiff brings this action asserting that as a result of Defendants' actions – particularly ACS's alleged "infiltration" of hers and Bob's lives and HRA's and Medicaid's "intentionally and recklessly depriv[ing]" her of all information about her disabled child health insurance, which made her unable to take care of her child adequately and save his life − she suffered "cruel and unbearable pain" by having to watch Bob in "deep pain" for years. (*Id*. at 6-7.) Plaintiff claims that Defendants violated her civil rights and that, as a mother, she is entitled to compensation for the alleged violations that occurred.

## DISCUSSION

**A.      Plaintiff does not have standing to bring claims on behalf of Bob Sterling**

Plaintiff's amended complaint has not addressed the deficiencies that the Court found in the original complaint. As in the original pleading, Plaintiff's main assertions concern the alleged

change in Bob's insurance from Medicaid to an Aetna policy, under which he was denied medications, including an inhaler, that allegedly led to his premature death. She asserts that, as a mother, she is entitled to seek compensation for her son's pain and suffering. As explained in the February 2, 2022, order, however, as a *pro se* litigant, Plaintiff cannot assert claims on behalf of her deceased adult son.[1] *See U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another person's behalf in the other's cause." (internal quotation marks and citation omitted)); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause."). Plaintiff is not an attorney, and she does not allege any facts suggesting that she has been appointed administrator or personal representative of Bob's estate and there are no other beneficiaries or creditors of the estate. *See Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) ("[A]n administratrix or executrix of an estate may not proceed *pro se* when the estate has beneficiaries or creditors other than the litigant."). Plaintiff therefore lacks standing to assert claims on behalf of Bob or his estate. *See Garmon v. Cty. of Rockland*, No. 10-CV-7724 (ALC) (GWG), 2013 WL 541380, at *3 (S.D.N.Y. Feb. 11, 2013) ("Since Plaintiff was not named the administrator of the estate, he does not have standing to bring claims belonging to the decedent.") (collecting cases).

---

[1] A nonlawyer parent ordinarily cannot represent a child's interests *pro se*, even those of a minor child. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) (finding that minors "are entitled to trained legal assistance so their rights may be fully protected" and nonlawyer parents are not trained to represent competently the interests of their children); *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (holding that it is "a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action pro se in federal court on behalf of his or her child").

### B. The named defendants cannot be held liable under Section 1983

Plaintiff is essentially seeking to hold local agencies, such as HRA and ACS, liable for their alleged involvement in changing her deceased son's Medicaid benefits, which she asserts led to his premature death. Even if Plaintiff could assert claims on her own behalf, the defendants she seeks to sue cannot be held liable under 42 U.S.C. § 1983. First, as agencies of the City of New York, HRA and ACS are not entities that can be sued. The New York City Charter provides that "[a]ll actions or proceedings for the recovery of penalties for the violation of any law should be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." New York City Charter, Ch. 17, § 396; *see Friedman v. N.Y.C. Admin. For Children's Servs.*, 502 F. App'x 23, 27 n.3 (2d Cir. 2012) (summary order) (ACS is not a suable entity); *Tatum v. City of New York*, No. 19-CV-2581, 2019 WL 1877385, at *1 (S.D.N.Y. Apr. 26, 2019) (HRA is not a suable entity); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) (" [A] plaintiff is generally prohibited from suing a municipal agency.") To the extent Plaintiff is asserting claims on her own behalf, the Court dismisses Plaintiff's claims against HRA and ACS for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Further, although Plaintiff alleges that "Medicaid" is an agency of the City of New York, such an entity does not exist. Medicaid is a federal program administered by the states, and in New York, the New York State Department of Health (DOH) is the state agency responsible for its administration. *See* N.Y. Soc. Serv. Law § 363-a; *Shakhnes v. Berlin*, 689 F.3d 244, 248 (2d

Cir. 2012). Plaintiff's purported claims against Medicaid must be dismissed because it is not entity that can be sued.[2]

## C. Plaintiff has not alleged a federal claim for relief

In light of Plaintiff's *pro se* status and clear intention to assert claims against the City of New York, the Court construes the complaint as asserting claims against the City of New York. A municipality or other local government may be liable under Section 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson,* 63 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)). A municipal organization is subject to liability where its "failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694).

As the Court previously concluded in the February 2, 2022, order, Plaintiff's assertions concerning the change in her son's Medicaid insurance do not state a procedural due process claim under the Fourteenth Amendment because she did not allege facts suggesting that either

---

[2] Even if the Court were to construe Plaintiff's alleged claims against Medicaid, as an attempt to bring claims against DOH, such claims could not proceed. [A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983. *See Trotman v. Palisades Interstate Park Comm' n*, 557 F.2d 35, 40 (2d Cir. 1977). As DOH is an arm of the State of New York, it is therefore protected by Eleventh Amendment immunity.

Further, Plaintiff alleges no facts suggesting that, once a decision was made with respect to Bob's Medicaid benefits, DOH or an agency with delegated authority failed to grant them an opportunity for a fair hearing as provided by federal and state regulations. *See* 42 C.F.R. § 431.205; N.Y. Soc. Serv. Law § 22(1).

she or Bob was deprived of a property interest without due process. Plaintiff's amended complaint provides no additional factual allegations to change that conclusion. In fact, she does not address in the amended complaint the availability or sufficiency of the City of New York's procedures or whether she was given the opportunity to challenge the alleged change in Bob's Medicaid or any other alleged deprivations. Because Plaintiff does not allege that the City of New York's notice and hearing procedures were constitutionally deficient in any way, she fails to state a claim for relief against the City of New York.[3]

**D.      The Court will not consider Plaintiff's state-law claims**

Plaintiff's assertions could suggest state-law claims such as wrongful death. A district court, however, may decline to exercise supplemental jurisdiction of state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms

---

[3] In the amended complaint, Plaintiff makes several references to discrimination and the deprivation of her parental rights when ACS wrongfully accused her of child abuse and removed her son from her care. The Court declines to consider in this action any claim Plaintiff is seeking to assert that may implicate the substantive component of the Due Process Clause of the Fourteenth Amendment as beyond the scope of the permitted amendment. The Court is authorized to dismiss claims going beyond the scope of the original lawsuit and the permitted amendment. *See, e.g. Palm Beach Strategic Income, LP v. Salzman,* 457 F. App'x 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."); *Grimes v. Fremont General Corp.*, 933 F. Supp. 2d 584, 597 (S.D.N.Y. 2013) (citing cases); *Sullivan v. Stein,* 487 F. Supp. 2d 52 (D. Conn. 2007) (dismissing claims as "beyond the scope" of the court's order).

the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int' l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

E.    **Leave to amend denied**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

Plaintiff's action, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed for lack of standing to assert claims on behalf of Bob Sterling, and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court declines to address any substantive due process claim suggested by the amended complaint; any such additional claim, which the Court did not authorize for inclusion in the amendment, is dismissed without prejudice. The Court also declines to exercise supplemental jurisdiction of Plaintiff's state-law claims. All other pending matters in this case are terminated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this case.

SO ORDERED.

Dated: August 1, 2022
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge